**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 14-cv-0622-WJM

CHERIE M. BARKER,

    Plaintiff,

v.

CAROLYN W. COLVIN,

    Defendant.

---

**ORDER AFFIRMING ADMINISTRATIVE LAW JUDGE'S DENIAL OF BENEFITS**

---

This matter is before the Court on review of the Commissioner of Social Security's decision to deny Plaintiff's application for disability insurance benefits. The Plaintiff filed an Opening Brief (ECF No. 17), the Commissioner filed a Response (ECF No. 18), and Plaintiff filed a Reply (ECF No. 19). After reviewing the briefs and administrative record filed with the Court, the Commissioner's decision denying Plaintiff's application for Social Security disability benefits is affirmed.

**I. BACKGROUND**

Plaintiff was born in 1969. (Record ("R.") (ECF No. 10) at 100.) Plaintiff's medical records indicate that she has been diagnosed since 2007 with a number of medical conditions, including post-traumatic stress disorder, major depressive disorder, panic disorder with agoraphobia, dissociative disorder, polysubstance abuse in full remission, and alcohol abuse in partial remission. (*Id.* at 222-29, 233-50, 882-906.) Plaintiff alleges a disability onset date of November 1, 2007. (*Id.* at 100.) Plaintiff has

past relevant work as an administrative assistant, a customer service representative, a front desk clerk, a reservation clerk, and a reservations manager. (*Id.* at 45.)

Plaintiff's application for disability insurance benefits was denied on July 31, 2008 (*id.* at 50-52), and she requested a hearing before an administrative law judge (*id.* at 55-56). Administrative Law Judge William Musseman ("the ALJ") presided over Plaintiff's hearing on September 24, 2009. (*Id.* at 25-48.) Plaintiff was represented by counsel at the hearing, and Plaintiff and vocational expert Nora Dunn testified at the hearing. (*Id.*)

On February 2, 2010, the ALJ issued his decision (*id.* at 10-20), concluding that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from November 1, 2007, the alleged onset date, through September 30, 2009, the date last insured. . . ." (*id.* at 19). The ALJ made the following findings of fact and conclusions of law in accordance with the Commissioner's five-step sequential evaluation process.[1] At step one, the ALJ ruled that Plaintiff had not engaged in any substantial gainful activity between November 1, 2007 and September 30, 2009. (*Id.* at 12.) At step two, the ALJ held that Plaintiff had the following severe impairments: anxiety, an affective disorder, and obesity. (*Id.* at 12-13.) At step three, the ALJ held that Plaintiff's severe impairments do not meet or equal the established listing of

---

[1] The five-step process requires the ALJ consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.) The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

impairments under the governing regulations. (*Id.* at 13.) The ALJ then analyzed Plaintiff's residual functional capacity ("RFC"), concluding that Plaintiff

> had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except that she should avoid unprotected heights; should not climb ladders, ropes, or scaffolds; and should not deal with the general public, or perform tasks with a SVP of greater than 3, or with GED levels of more than 1, 2, or 3. The claimant should only occasionally interact with co-workers, and should have minimal supervision on the job.

(*Id.* at 13-14.) The ALJ then ruled at step four that Plaintiff was unable to perform any past relevant work. (*Id.* at 18.) However, considering the RFC assessment described above, along with Plaintiff's age, education, and work experience, at step five the ALJ determined (based on the vocational expert's testimony) that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as floor waxer, hand packer, and window cleaner. (*Id.* at 18-19.)

Plaintiff appealed the ALJ's decision (*id.* at 99), and the Appeals Council denied her appeal (*id.* at 1-6). Plaintiff challenged that decision before this Court on September 16, 2011, and the Court remanded based on the ALJ's limited analysis of the treatment and opinions expressed by Jeffery Harazin, M.D. (*Id.* at 982-92.) Dr. Harazin regularly treated Plaintiff from February 2006 through late 2009. (*Id.* at 882-99.) Plaintiff's treatment history with Dr. Harazin overlaps with the onset of her disability through the date she was last insured. (*Id.* at 946.) As such, the Court urged the ALJ to more fully consider the length of Dr. Harazin's treatment, his familiarity with Plaintiff's condition, and his treatment records during Plaintiff's alleged period of disability. (*Id.* at 990-91.)

On March 11, 2013, the ALJ held a second hearing to evaluate Plaintiff's claim. (*Id*. at 952.) On April 4, 2013, the ALJ issued a second decision in accordance with the Court's Order, in which he assigned no weight to Dr. Harazin's opinion. (*Id*. at 927-46.) The ALJ consequently denied Plaintiff's application for benefits, finding Plaintiff was not disabled between her alleged disability onset date, November 1, 2007, through the date she was last insured, December 31, 2009. (*Id.* at 946.) The ALJ issued his findings under the five-step evaluation process referenced above, which were consistent with his February 2, 2010 decision. (*Compare id*. at 10-20, *with id*. at 927-46.) The Plaintiff filed exceptions to the ALJ's April 4, 2013 decision on October 3, 2013 (*id*. at 918), which the Appeals Council declined to consider (*id*. at 907). On February 27, 2014, the Plaintiff filed the instant action challenging the ALJ's decision. (ECF No. 1.)

## II.  LEGAL STANDARD

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if

the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. ANALYSIS

Plaintiff raises the following arguments on appeal: 1) the ALJ's decision on remand failed to give proper weight to the opinion of treating physician Dr. Harazin; 2) the ALJ assigned improper weight to the opinion of non-treating physician, Richard Garnand, M.D.; 3) the ALJ's conclusion regarding Plaintiff's RFC is not supported by substantial evidence; and 4) the ALJ improperly questioned the authenticity of Dr. Harazin's treatment records. (ECF No. 17.) The Court considers each of Plaintiff's arguments below.

**A.     Weighing the Medical Opinions**

Plaintiff contends that the ALJ erred in giving more weight to Dr. Garnand's opinion than he did to Dr. Harazin's. (ECF No. 17 at 13-21.) "An ALJ must evaluate every medical opinion in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). In determining what weight to give a medical opinion, the ALJ "must . . . consider a series of specific factors" listed in 20 C.F.R. § 404.1527. *Id.* Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (internal quotations omitted).

The ALJ need not explicitly discuss each individual factor. *See Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007). Nevertheless, the ALJ must consider every factor in determining the weight to assign a medical opinion, and "give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." *Watkins*, 350 F.3d at 1301 (quotation marks and brackets omitted).

1. Weight of Treating Doctor's Medical Opinion

The ALJ assigned no weight to the opinions of Plaintiff's treating physician, Dr. Harazin. (R. at 942.) The opinion of a treating physician is generally "entitled to great weight because it reflects expert judgment based on continuing observation of a patient's condition over a prolonged period of time." *Williams v. Chater*, 923 F. Supp. 1373, 1379 (D. Kan. 1996). However, an ALJ may disregard that opinion if it is contradicted by other medical evidence, or is otherwise inconsistent with substantial evidence in the record. *See Marshall v. Astrue*, 315 F. App'x 757, 759-60 (10th Cir. 2009); 20 C.F.R. § 404.1527(c)(2). The analysis of how much weight to accord a treating source opinion is sequential:

> An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Watkins*, 350 F.3d at 1300 (citing Social Security Ruling ("SSR") 96–2p, 1996 WL 374188 (July 2, 1996)).

A finding that a treating doctor's opinion does not meet the test for controlling weight does "not [mean] that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927." SSR 96–2p, 1996 W L 374188, *4 (July 2, 1996). If the ALJ chooses to disregard the opinion entirely, he must "give specific, legitimate reasons" for doing so. *Watkins*, 350 F.3d at 1301.

Here, the ALJ reviewed the medical opinions of Dr. Harazin in accordance with the Court's Order. On August 8, 2009, Dr. Harazin provided a RFC assessment of the Plaintiff, which indicates that Plaintiff suffers from "severe PTSD" that affects "every aspect of her life." (R. at 905.) According to Dr. Harazin's assessment, Plaintiff's PTSD results in poor sleep patterns, mistrust of others, severe anxiety, rage, aggression, significant confusion, and severe difficulty being reliable, punctual, and sustaining effort. (*Id*.) Dr. Harazin also noted that Plaintiff is markedly limited in several areas, including sustained concentration and persistence, social interaction, and adaptation. (*Id.* at 904.)

However, the ALJ found that Dr. Harazin's treatment notes during the relevant disability period did not support his RFC assessment with respect to the severity of Plaintiff's PTSD. (*Id*. at 941.) The ALJ stated that, "[w]hile [Dr. Harazin's] notes reflect periodic exacerbations of anxiety symptoms, such as paranoia or sleep difficulties since he began treating [Plaintiff] in 2006, these issues quickly resolved with medication adjustments." (*Id.*) The ALJ cited Plaintiff's statements to Shirley Robbins, Psy.D. that she is "obsessive" with respect to being on time (*id*. at 225), noting that they contradict

Dr. Harazin's assessment that Plaintiff has "severe difficulty being reliable [and] punctual." (*id.* at 905). Treatment records indicate that Plaintiff "kept fairly regular monthly appointments with [Dr. Harazin] since beginning treatment, and that overall her condition has been stable and controlled on medication." (*Id*. at 935.) The ALJ also cited evidence showing that Plaintiff is able to engage in "a wide variety of activities, to interact appropriately with friends and family, and to go . . . often out of her home," all of which suggests the ability to sustain some level of employment. (*Id.* at 940.)

The ALJ, in part, relied on the foregoing record evidence to determine that Dr. Harazin's assessment was entitled no weight. (*Id*. at 942.) In making this determination, the ALJ stated that he had relied on the entirety of Dr. Harazin's records from Plaintiff's alleged disability onset date through the date she was last insured. (*Id.* at 935.) Based on this evidence, the ALJ found that Dr. Harazin's opinion was entitled to no weight given the "lack of objective support or clinical findings" for his opinion, and the inconsistencies between his monthly progress notes and functional capacity assessment. (*Id*. at 941-42.)

The Court finds that the ALJ applied the correct legal standard and considered the relevant factors required by the regulations. The ALJ's decision was also supported by substantial evidence that was not overwhelmed by other evidence in the record. *Grogan*, 399 F.3d at 1261-62. Specifically, the ALJ noted that Dr. Harazin had been Plaintiff's treating physician since 2006, that there were inconsistencies between Dr. Harazin's RFC opinion, his own clinical records, and the record as a whole, and that evidence indicated Plaintiff was capable of performing many activities of daily living.

*See* 20 C.F.R. §§ 404.1527, 416.927. An ALJ may permissibly discount a treating doctor's opinion based on a lack of support from clinical findings. *See Watkins*, 350 F.3d at 1300. Inconsistencies in the record can also support an ALJ's decision to discount a medical opinion, *see Mounts v. Astrue*, 479 F. App'x 860, 866 (10th Cir. 2012), and the Court notes that whether a claimant is disabled is a determination reserved to the Commissioner. *Lackey v. Barnhart*, 127 F. App'x 455, 457 (10th Cir. 2005); 20 C.F.R. § 404.1527(d). The decision to give Dr. Harazin's opinion no weight thus provides no grounds for reversal.

    2.    <u>Weight of Non-treating Doctor's Medical Opinion</u>

Since the ALJ determined that Dr. Harazin's opinion was inconsistent with the medical evidence, the ALJ proceeded to examine the non-treating physicians' reports to determine if they outweighed Dr. Harazin's report. *See Hamlin*, 365 F.3d at 1215 ("[W]hen a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report. . . ."). "When considering the weight of non-treating sources, the ALJ must determine the appropriate weight given to the source by looking to the factors that apply to all medical opinions." *Retana v. Astrue*, 2012 WL 1079229, at *4 (D. Colo. Mar. 30, 2012). "If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it." *Hamlin*, 365 F.3d at 1215 (citing 20 C.F.R. § 416.927(e)(2)(ii)).

The ALJ gave significant weight to the medical opinion of Dr. Garnand, a non-examining state agency consultant. (R. at 932.) Dr. Garnand completed a RFC

assessment of Plaintiff after reviewing Plaintiff's "inpatient psychiatric hospitalization [records], a consultative, psychological evaluation, as well as [Plaintiff's] responses in a function report." (*Id.*)  Dr. Garnand found Plaintiff had only mild or moderate difficulties in social functioning, activities of daily living, maintaining concentration, persistence, and pace, and had experienced no episodes of decompensation of extended duration. (*Id*. at 247.)  Dr. Garnand also noted that Plaintiff could perform activities within a schedule, be punctual, make simple work-related decisions, sustain ordinary routines, and understand simple instructions.  (*Id*. at 233.)  The ALJ found these determinations to be consistent with the record as a whole, indicating that Plaintiff's condition was "stable and well controlled on medication, with only periodic exacerbations of symptoms due to situational stressors."  (*Id*. at 932.)

On this record, the Court finds that the ALJ applied the correct legal standard and considered the relevant factors required by the regulations.  The ALJ considered the degree to which Dr. Garnand's opinion was supported by the relevant evidence, and the consistency between his opinion and the record as a whole.  (*Id*.)  Further, there is substantial evidence in the record to support Dr. Garnand's opinion, as well as the ALJ's RFC assessment.  Dr. Garnand opined that the Plaintiff suffered only mild or moderate limitations, and could perform ordinary activities within a schedule.  (*Id*. at 233.)  The ALJ found that Dr. Garnand's opinions were consistent with the record evidence that showed Plaintiff's condition has remained relatively stable and controlled on medication.  (*Id*. at 932.)  The Court must defer to the ALJ's evaluation of the evidence and may not reweigh it in his place.  See *Salazar*, 468 F.3d at 621.

Therefore, the Court finds that the ALJ's evaluation of Dr. Garnand's opinion does not require reversal.

**B.    The Authenticity of Dr. Harazin's Treatment Records**

Plaintiff contends that the ALJ improperly questioned the authenticity of Dr. Harazin's August 8, 2009 RFC assessment based on handwriting variations between his assessment and other session notes.  (ECF No. 17 at 16.)  Although the ALJ did express doubt as to whether Dr. Harazin personally completed the assessment, he nonetheless substantively analyzed it against the remaining record.  (R. at 934-41.)  The Court therefore finds that the ALJ did not disregard Dr. Harazin's assessment based on any perceived lack of authenticity, but instead based his denial of benefits on substantial evidence contained in Dr. Harazin's assessment, his session notes, and the record as a whole.  Accordingly, the Court rejects Plaintiff's argument that the ALJ's doubt regarding the authenticity of Dr. Harazin's notes resulted in an improper analysis.

## IV.  CONCLUSION

For the reasons set forth above, the Court AFFIRMS the Commissioner's denial of benefits.  The Clerk shall close this case and enter judgment in favor of Defendant.

Dated this 6th day of January, 2015.

BY THE COURT:

William J. Martinez
United States District Judge